The lessors of the plaintiff claimed the premises in dispute as (234) the purchasers thereof at an execution sale of the property of William J. Lewis. The plaintiff alleged that the defendant also claimed under the said Lewis, and gave him notice to produce on the trial the contract or instruments under which he claimed; and, accordingly, *Page 171 
the defendant produced the bonds hereinafter mentioned, and the plaintiff read them to the jury. The one is an obligation dated 3 January, 1832, given by William J. Lewis to the present defendant, in the penalty of $800, with condition that he would, on request, convey or cause to be conveyed to Wilson the premises in dispute, which are therein described as being part of a tract of land which Blake Piercey had before agreed to sell to James Wilson (the defendant), and bound himself (Piercey) by bond to convey to said Wilson, and which land the said Wilson had sold to the said Lewis, and transferred by assigning to Lewis the said bond so given by Piercey. The other bond produced by the defendant was that referred to in the one just mentioned, and is an obligation, dated 14 November, 1828, given by Blake Piercey to James Wilson in the penalty of $1,000, with condition that he would convey to said Wilson, or his assigns, a certain tract of land therein described, which, it is admitted, includes as a part of it the premises in dispute. On this bond is an indorsement, dated 23 January, 1830, purporting to be a contract of sale from Wilson to Lewis of the land mentioned in the bond, and to be an assignment of the bond to Lewis.
In March, 1832, judgment was rendered against William J. Lewis, and execution issued thereon in July following, on which the premises were sold, and the lessors of the plaintiff bought them; the present defendant being then in possession under his contract of repurchase.
On the trial the counsel for the plaintiff contended that the defendant, claiming under Lewis, was estopped to deny a legal title in him, or, at all events, that Lewis had such an equitable title as was subject to be sold under execution, so that the legal title would pass to the purchaser. But the court held otherwise, and the plaintiff submitted to a nonsuit and appealed. (235)
The title of Lewis appeared, upon the plaintiff's own evidence, to have been but equitable at any time, and, consequently, the defendant could not be estopped from insisting thereon.
If Lewis be considered as the cestui que trust in fee, then the land was not subject to the execution under which it was sold, because, before execution sued, Lewis had contracted to sell to the defendant, which amounted to an assignment of the trust and took the case out of the act of 1812. Hall v. Harris, 38 N.C. 289. Indeed, Lewis's sale to the defendant was some months before the teste of the executions, and even the rendering of the judgments against Lewis, and it is not impeached for fraud; so that there could be nothing in him, either at law or in equity, liable to execution.
PER CURIAM. Affirmed. *Page 172 
(236)